587 P.2d 44

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Thomas C. GALIO and Joe Cruz, Defendants-Appellants.**

**No. 3276.**

Court of Appeals of New Mexico.

July 5, 1978.

Writ of Certiorari Quashed Nov. 15, 1978.

Timothy P. Woolston, Albuquerque, for defendants-appellants.

Toney Anaya, Atty. Gen., Santa Fe, Michael E. Sanchez, Roderick A. Dorr, Asst. Attys. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HENDLEY, Judge.

Defendant, Galio, was convicted of one count of dismantling a motor vehicle without a license contrary to § 64–8–1(A)(2), N.M.S.A.1953 (2d Repl. Vol. 9, pt. 2, 1972, Supp.1975), conspiracy to dismantle a motor vehicle without a license contrary to § 40A–28–2, N.M.S.A.1953 (2d Repl. Vol. 6, 1972), four counts of vehicles without manufacturer's numbers contrary to § 64–9–7, N.M.S.A.1953, (2d Repl. Vol. 9, pt. 2, 1972), three counts of receiving or transferring stolen vehicles contrary to § 64–9–5, N.M.S.A.1953 (2d Repl. Vol. 9, pt. 2, 1972) and § 64–37–4, N.M.S.A.1953 (2d Repl. Vol. 9, pt. 2, 1972, Supp.1975), and one count of receiving stolen property contrary to § 40A–16–11(A) and (E), N.M.S.A.1953 (2d Repl. Vol. 6, 1972, Supp.1975). Defendant, Cruz, an employee of Galio's, was convicted on one count of conspiracy supra and one count of receiving stolen property supra. They ap-

peal alleging several points for reversal. Point I regarding a warrantless search (inspection) is dispositive and we reverse.

A warrantless inspection, whereby the numerous criminal violations were discovered, was conducted of Galio's business premises (Auto Diagnostic and Repair Clinic) by the Albuquerque Police Department. The inspection was made pursuant to § 64–2–14, N.M.S.A.1953 (2d Repl. Vol. 9, pt. 2, 1972) which states in part:

"POLICE AUTHORITY OF DIVISION.—The Commissioner and such officers, deputies and inspectors of the division as he shall designate by the issuance of credentials shall have the powers:

" * * *

"(d) Inspect any vehicle of a type required to be registered hereunder in any public garage or repair shop or in any place where such vehicles are held for sale or wrecking, for the purpose of locating stolen vehicles and investigating the title and registration thereof;

"(e) To determine by inspection that all dealers and wreckers of vehicles are in compliance with the provisions of this act with particular reference to but not limited to the requirements for an established place of business and for records."

We are not here concerned with a consent search or with probable cause to search. The sole issue is whether § 64–2–14(d) and (e), supra, meets the requirements of a warrantless search as set forth in *State ex rel. Environmental v. Albuquerque Pub.*, 91 N.M. 125, 571 P.2d 117 (1977) and the subsequent United States Supreme Court case of *Marshall v. Barlow's Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305, decided May 23, 1978. We hold that it does not.

*State ex rel. Environmental v. Albuquerque Pub.*, supra, lists four tests. We discuss the third test of whether the warrantless inspection is a crucial part of a regulatory scheme designed to further an urgent government interest. See *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972); *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970); *Compare, Ca-*

mara v. *Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); *See v. City of Seattle,* 387 U.S. 541, 18 L.Ed.2d 943, 87 S.Ct. 1737 (1967).

We must first decide what is an urgent governmental interest. Historically it is one that involves some inherent danger of public concern or an interest in excisable or dutiable articles as opposed to a private concern or interest. The *Biswell* rationale was that a close scrutiny of interstate firearms traffic was undeniably of key importance to federal efforts to prevent violent crimes and to assist the states in regulating firearm traffic within their borders. Warrantless inspections were deemed to be reasonable official conduct and essential to properly supervise firearms traffic. The *Colonnade* rationale was that of an interest in an historically regulated industry with deep concern in the revenues to the government. Further, it was in response to a relatively unique circumstance. See *Marshall.*

■ Unless the statutory or regulatory standards involve a relatively unique circumstance a warrant is required to make an inspection as was made in the instant case. See *Marshall.*

Although not enacted as a part of the law which enacted § 64–2–14, supra, § 64–37–1, N.M.S.A.1953 (2d Repl. Vol. 9, 1972, pt. 2, Supp.1975) reflects the policy of the legislature with respect to motor vehicles which states:

". . . The distribution and sale of motor vehicles in this state vitally affects the general economy of the state and the public interest and welfare of its citizens. It is the policy of this state and the purpose of this act [64–37–1 to 64–37–16] to exercise the state's police power to ensure a sound system of distributing and selling motor vehicles and regulating the manufacturers, distributors, representatives and dealers of those vehicles to provide for compliance with manufacturer's warranties, and to prevent frauds, unfair practices, discriminations, impositions and other abuses of our citizens."

That policy is similar to 29 U.S.C.A. § 651 of the Occupational Safety and Health Act, which states:

"(a) The Congress finds that personal injuries and illnesses arising out of work situations impose a substantial burden upon, and are a hindrance to, interstate commerce in terms of lost production, wage loss, medical expenses, and disability compensation payments.

"(b) The Congress declares it to be its purpose and policy, through the exercise of its powers to regulate commerce among the several States and with foreign nations and to provide for the general welfare, to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources—"

■ *Marshall* held that a warrantless search under the OSHA policy would not be reasonable under the Fourth Amendment. In light of *Marshall* and the foregoing cases we fail to see what urgent government interest would be served by a warrantless inspection. Our holding does not foreclose warrantless inspections in case of consent or in an emergency situation. However, what constitutes an emergency situation must be decided case by case. See *Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486, decided May 31, 1978.

We hold that § 64–2–14, supra, requires the issuance of an administrative warrant, absent consent or an emergency situation. *Marshall* sets forth the grounds for issuance of such a warrant as follows:

". . . Probable cause in the criminal law sense is not required. For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that 'reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment].' *Camara v. Municipal Court, supra,* [387 U.S.] at 538, 87 S.Ct. 1727. A warrant showing that a

specific business has been chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources such as, for example, dispersion of employees in various types of industries across a given area, and the desired frequency of searches in any of the lesser divisions of the area, would protect an employer's Fourth Amendment rights. . . . ."

The act is unconstitutional insofar as it purports to authorize a warrantless inspection outside the generally recognized exceptions. Accordingly, the motion to suppress should have been granted.

Reversed and remanded.

IT IS SO ORDERED.

WOOD, C. J., and LOPEZ, J., concur.

WOOD, Chief Judge (Specially Concurring).

The State contends the inspection scheme involved in this case plays a crucial part in regulating motor vehicles. By inference, the argument is that the inspection scheme plays a crucial part in the State's efforts to control the traffic in stolen vehicles. I agree that the Legislature could properly consider an inspection scheme to be crucial. But that does not answer the question. Is there an urgent governmental interest that this crucial inspection scheme be implemented by warrantless searches?

The majority opinion cites cases which required warrants for fire, health, and housing inspection programs (*Camara*, supra) and for safety hazards (*Marshall*, supra). These important programs cannot be distinguished from the motor vehicle inspection in this case which inspected vehicles in a commercial business. The special circumstances involving liquor (*Colonnade*, supra) and firearms (*Biswell*, supra) do not exist in this case.

Although the motor vehicle business is a pervasively regulated business and there cannot be any great expectation of privacy in a business so pervasively regulated, there is no urgent governmental interest justifying a warrantless inspection scheme. Since probable cause in the criminal law sense is not required, the warrant requirement imposes no great impediment to the statutory inspection scheme.

I concur with Judge Hendley's opinion. The purpose of this special concurrence is to point out that the inspection scheme will not be impeded by requiring a warrant.