733 P.2d 1322

**NEW MEXICO ENVIRONMENTAL IMPROVEMENT DIVISION, Petitioner-Appellee,**

v.

**CLIMAX CHEMICAL COMPANY, Respondent-Appellant.**

**No. 9136.**

Court of Appeals of New Mexico.

Dec. 30, 1986.

Certiorari Denied March 5, 1987.

Paul G. Bardacke, Atty. Gen., Duff H. Westbrook, Sp. Asst. Atty. Gen., Santa Fe, for petitioner-appellee.

Paul M. Bohannon, Deborah R. Wollen, Albuquerque, for respondent-appellant.

**OPINION**

JAMES T. MARTIN, District Judge.

The New Mexico Environmental Improvement Division (EID) requested that

Climax Chemical Company (Climax) allow one of its field inspectors to go into the Climax plant in Lea County to inspect certain portions of the premises for compliance with the Hazardous Waste Act. Climax permitted an inspection of part of its premises but denied access to other portions, claiming that the part of the plant to which the inspector was denied access was not subject to the provisions of the Act or the rules and regulations of EID. Climax took the position that entry to those portions of the plant would be denied unless EID first obtained a search warrant.

EID thereafter filed an application for an inspection order or an administrative search warrant in the District Court of Santa Fe County. The verified application was made by a field inspector of the Hazardous Waste Section of EID, who was also an environmental scientist. The application stated, in part, that the field inspector had attempted to inspect Climax's acid production facilities on which hazardous waste is generated, treated, stored or disposed of; that he was denied access to certain portions of the facilities; that he had observed a large puddle of liquid from an undetermined source or sources; that the puddle had been tested with indicator (litmus) paper which indicated that the liquid was at a pH of less than 2.0, below the threshold for definition of corrosive hazardous waste; and that the point of generation and method of control of these wastes needed to be verified in order to ensure that the Hazardous Waste Act and associated regulations were being complied with. The district court found that probable cause had been shown by the verified application for issuance of an administrative search warrant. The district court, however, directed that Climax be informed of the issuance of the warrant prior to its service to afford Climax sufficient time to challenge the warrant.

Thereafter, Climax filed a motion to quash the search warrant alleging that the premises sought to be inspected were not subject to regulation and that there was no authority for the district court to issue a "walk-through" search warrant. In the alternative, Climax filed a motion to dismiss or to transfer for lack of proper venue in Santa Fe County.

An evidentiary hearing was held, and the district court again determined that probable cause had been shown for issuance of an administrative search warrant. It was also found that EID, as a state agency, was a resident of Santa Fe County; that the issuance of the search warrant was a transitory type of action, and that venue was, therefore, proper in Santa Fe County.

The Hazardous Waste Act, NMSA 1978, Sections 74–4–1 to –13 (Repl.1986), provides, in part, that its purpose "is to help ensure the maintenance of the quality of the state's environment; to confer optimum health, safety, comfort and economic and social well-being on its inhabitants." The Act requires registration and issuance of a permit by any person producing, storing, or disposing of hazardous waste. Climax admits that it manufactures hydrochloric acid; that it is registered with the EID and holds a permit. Hydrochloric acid, in its pure state, or if diluted when the measured pH is less than 2.0, is classified as a hazardous waste. N.M. Hazardous Waste Management Reg. 201.B.3.

■ The Act further provides that the owner of a regulated premises shall permit entry for an inspection to an EID representative at reasonable times to any establishment or place where hazardous wastes are or have been generated, stored, or treated. § 74–4–4.3. There is no provision in the Hazardous Waste Act for issuance of an inspection order or administrative search warrant. However, a nonconsensual warrantless administrative inspection of business premises can only be made in very limited circumstances, which are not present in this proceeding. *See State ex rel. Environmental Improvement Agency v. Albuquerque Publishing Co.*, 91 N.M. 125, 571 P.2d 117 (1977). In the event consent to enter and inspect is denied, an administrative search warrant is required. *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). EID's

statutory right of entry provides EID with sufficient authority for obtaining such a warrant. *See Bunker Hill Co. Lead & Zinc Smelter v. United States Environmental Protection Agency,* 658 F.2d 1280 (9th Cir.1981) (right of entry in Clean Air Act provides sufficient authority for obtaining an inspection warrant); *Outboard Marine Corp. v. Thomas,* 610 F.Supp. 1234 (N.D.Ill.1985) (where statute provides right of entry but no mechanism to accomplish it, an ex parte administrative search warrant may be used); *In Re Order Pursuant to Section 3013(d) RCRA,* 550 F.Supp. 1361 (W.D.Wash.1982) (EPA may obtain ex parte warrant under provisions identical to those in the Hazardous Waste Act). Obtaining a search warrant, as was done in this case, is the proper procedure. *See State v. Galio,* 92 N.M. 266, 587 P.2d 44 (Ct.App.1978).

At the hearing on the motion to quash, Climax produced evidence that its product was manufactured in a fluidized bed reactor. The liquid is then circulated through a wet scrubber into a tank, from which it is then pumped to a sump. It is then transferred from there to the area in which it is to be impounded. Climax maintained that the generating unit was a totally enclosed treatment facility, as defined in the EID regulations, and, therefore, it was exempt from the regulations until the product exited the facility. Climax conceded that the waste would be considered as having exited the enclosed facility at the sump area and in the impoundment tanks. It then argued that this was the only area which could be inspected. In other words, Climax claims that if EID cannot regulate the area, it cannot inspect it. This contention overlooks the provisions of Section 74–4–4.3 which allow EID to enter "any establishment or other place" where hazardous wastes are or have been generated, stored, or treated.

■ In addition, even though Climax admits engaging in a regulated activity, it is its contention that it is entitled to identify the areas in which hazardous wastes are subject to regulation, thereby requiring the state to take Climax's word on this point. This position of Climax is without merit. Regardless of whether each specific part of the premises is subject to regulation, the statute clearly allows an inspection of all areas where the hazardous waste is being generated, whether it is in an enclosed facility or not. In an inspection, pursuant to the Hazardous Waste Act, as with a federal Occupational Safety and Health Act inspection, "[t]he primary governmental interest at stake is to prevent even the unintentional development of conditions which are hazardous to public health and safety." *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). If the EID did not have the right to have a "walk-through" inspection of the areas in which hazardous wastes are being generated, stored, or treated, there would be no way that it could reasonably determine whether its regulations were being violated, thus frustrating the purpose of the Hazardous Waste Act.

During the limited inspection which was permitted by Climax, a litmus paper test was made of some liquid waste which was found to have a corrosivity that would bring it within the definition of a hazardous waste. Climax objected to evidence concerning this test on the grounds that a litmus paper test is not recognized by the EID regulations. There was evidence submitted that the approved method of testing is with a pH meter, and that the use of a litmus paper test had been proposed but not adopted by regulation. The thrust of this argument is that EID failed to establish probable cause for the issuance of the administrative search warrant.

■ Probable cause in the criminal law sense is not required before an administrative search warrant may be issued. *Marshall v. Barlow's, Inc.* The test for administrative probable cause based on specific evidence is whether the application is based on a reasonable belief that a violation may exist on the premises. *See Marshall v. Horn Seed Co.,* 647 F.2d 96 (10th Cir.1981). *See also West Point-Pepperell, Inc. v.*

*Donovan,* 689 F.2d 950 (11th Cir.1982) (the application must contain reasonable evidence sufficient to support a suspicion of a violation). Generally, applications for search warrants are tested by much less rigorous standards than those governing the admissibility of evidence at trial, and probable cause may be determined on the basis of evidence which would not be legally competent at trial. *See State v. Perea,* 85 N.M. 505, 513 P.2d 1287 (Ct.App.1973). For example, under the more stringent standards applicable to a criminal search warrant for controlled substances, a sufficient basis for a finding of probable cause has been supplied by the statement of an unidentified informant that he was able to identify heroin because he was a heroin addict. *State v. Cervantes,* 92 N.M. 643, 593 P.2d 478 (Ct.App.1979).

 In the instant case, the district court was presented with the sworn statement of an environmental scientist that the litmus paper test indicated that the liquid in the puddle had a pH of less than 2.0 and was a corrosive hazardous waste. This evidence supplied a sufficient reasonable belief that the material was a hazardous waste. The fact that the litmus paper test may be inadequate for other purposes is immaterial.

The presence of a large puddle of hazardous waste from an undetermined source also provided a plausible basis for a belief that there may be a violation of the Hazardous Waste Act at Climax's facilities. Therefore, the application provided probable cause for the issuance of an administrative search warrant.

The trial court found that venue would lie in Santa Fe County, and we agree. The right to go upon and inspect real property, buildings, or premises located thereon does not mean that the proceeding involves title to land or an ownership interest in land which would require institution of the action in the county where the land is located. NMSA 1978, § 38–3–1(D) (Cum.Supp.1986); *Naumburg v. Cummins,* 98 N.M. 274, 648 P.2d 313 (1982).

This action is a transitory action and venue is controlled by Section 38–3–1(A), which allows an action to be brought in a county where the plaintiff resides. Climax has offered neither evidence nor argument suggesting that EID does not have its principal offices and a residence for venue purposes in Santa Fe County. Climax has failed to show that venue in the District Court of Santa Fe County was improper.

The judgment of the trial court in issuing the administrative search warrant and in refusing to quash the same is affirmed.

IT IS SO ORDERED.

HENDLEY, C.J.,. and TRUMAN, J., concur.