**Joyce C. JOHNSTON,**
**Plaintiff–Appellee,**

v.

**Richard KOPPES; Robert Tousignant,**
**Defendants–Appellants.**

No. 87–2980.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 9, 1988.

Decided June 30, 1988.

Dennis Eckhart, Deputy Atty. Gen., Sacramento, Cal., for defendants-appellants.

Loren McMaster, Sacramento, Cal., for plaintiff-appellee.

Before KOELSCH, NOONAN, and O'SCANNLAIN, Circuit Judges.

NOONAN, Circuit Judge:

Joyce C. Johnston brought suit under 42 U.S.C. § 1983 against Richard Koppes and Robert Tousignant, officials in the Department of Health Services of the State of California. Each side moved for summary judgment. Both motions were denied. Koppes and Tousignant appeal from the denial of their motion. The case involves the sensitive issue of the right of a government lawyer to exercise her constitutional rights outside the context of her employment by the government.

## FACTS

Joyce Johnston is an attorney employed by the Department of Health Services in its legal division and enjoys the civil service classification of Staff Counsel III. On September 10, 1984 she also had the designation of "lead attorney" within the Preventive Health Section. Richard Koppes was Acting Chief Counsel of the Department. Robert Tousignant was Acting Assistant Chief Counsel.

A hearing of a committee of the California Legislature was scheduled for the morning of September 11 on the subject of the use of state funds for abortion. On September 10 Joyce Johnston requested 2 hours of vacation time to attend the hearing the next day. Tousignant denied the request. She appealed to Koppes, who said he "preferred" she not attend the hearing. Early the next day she renewed the request to Koppes, who restated his preference and redirected the request to Tousignant. Tousignant again refused to grant her leave.

Johnston nonetheless attended the hearing. According to her complaint and declaration, she did not speak "at the hearing nor communicate her views in any manner." Koppes was angry that she had

come to the hearing because he knew that staff members might be called upon by the committee to come up from the audience and testify and he knew that Johnston's views did not agree with the policies of the office. Johnston was well known as one "favorable to the right to abortion and public funding for abortion." Koppes was "embarrassed" by her presence.

On the afternoon of September 11, Koppes ordered Tousignant to reorganize the Preventive Health Section to eliminate Johnston's function as lead attorney. He also asked the five chief assistant counsels in the legal office of the department to consider what additional action, if any, should be taken as a result of Johnston's attendance at the hearing. At the same time he also asked for legal advice as to the legal options that might be open to him regarding that attendance; his legal advisor was the Senior Staff Attorney, David Sandler, who handled all the Department's personnel actions.

On September 27 Koppes met with the assistant chief counsels to discuss a number of "incidents" involving Johnston, including attendance at the hearing. It was ultimately agreed at this conference that Johnston should be transferred to the Medi-Cal Section of the Department; this office advises the state on its five billion dollar Medi-Cal Program. Johnston was transferred.

Johnston submitted a grievance for denial of her vacation request for September 11. On October 17, 1984 Koppes granted the grievance and changed her absence from "absence without leave" to "vacation."

## PROCEEDINGS

On September 9, 1985 Johnston filed a complaint under 42 U.S.C. § 1983. She alleged that removal of her designation as lead attorney and her transfer to a different section was in retaliation for her exercise of constitutional rights guaranteed her by the First Amendment as incorporated in the Fourteenth Amendment. Specifically she said she had been punished for the exercise of her freedom of speech, her freedom of assembly, and her right to petition the government for redress of grievances.

She also asserted that she had been discriminated against on the basis of her religious beliefs and that the consequences of the alleged retaliation were injury to her professional standing and reputation, the loss of promotional opportunities, and emotional distress.

Both sides moved for summary judgment, the defendants on the basis of qualified immunity. Each party filed declarations in support of their respective motions. The district court held that there were material issues of fact in dispute and denied both motions. The defendants appeal.

## ANALYSIS

■ The defendants contend that they are entitled to qualified immunity because they did not violate any clearly established constitutional norm. *Mitchell v. Forsythe,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985). Johnston's claim that her transfer was in retaliation for exercising her freedom of speech is brought into some question by her statement that she went to the hearing as a spectator and in fact did not communicate her views "in any manner." Because we conclude Johnston's conduct was protected by other freedoms inherent in the First Amendment, we do not decide whether her conduct was protected speech. Under the First Amendment she also had the right "peacefully to assemble, and to petition the Government for a redress of grievances." *See Smith Arkansas State Highway Employees, Local 1315,* 441 U.S. 463, 465, 99 S.Ct. 1826, 1828, 60 L.Ed.2d 360 (1979).

■ Abortion and abortion rights are matters of great public concern. The consciences of citizens are divided on them. Public employees, as citizens, have a right to make their interest in the issues known to their legislators. At the very least, Johnston was assembling to let the legislature know of her conscientious concern.

Johnston's presence at the meeting was, by virtue of Koppes' retroactive granting of vacation time, not during working hours. Koppes' own declaration admits that Johnston's designation and function as lead attorney was eliminated immediately in the aftermath of her exercising these First Amendment Rights. Koppes' declaration further admits that one of the bases for transferring her to another section was her attendance at the hearing. It is apparent that if this fact was "a substantial" or "motivating" factor for the transfer, *see Mt. Healthy City School Dist. Bd. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977), then a fundamental constitutional norm was violated. Government cannot punish its employees for exercising rights guaranteed them by the Federal Constitution.

■ Koppes argues that he showed good faith by asking for the advice of a lawyer. His defense is an affirmative one, *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982), and so he bears the burden of proof. Four difficulties attend his argument. First, Sandler was not independent counsel but his subordinate. Second, Sandler's memorandum did not address the constitutionality of Koppes' action; it was directed simply to Koppes' power under the Government Code to discipline an insubordinate employee. Third, one of the assumptions of the advice was that Johnston had been denied vacation leave and so was acting contrary to the regular policy of the office; the assumption was retroactively undermined. Fourth, Sandler's advice was sought after Koppes had removed Johnston's title and function as lead attorney. Advice of this kind—from a subordinate, based on incorrect facts, sought in part after the action and not addressed to constitutional rights at all—does not establish good faith.

■ Sandler's memorandum did note the question whether Johnston's conduct violated a norm of professional conduct by putting her in conflict with the interests of her "client." Assuming that her client was the Department, she was not acting against the Department in any professional capacity. Loyalty to a client requires subordination of a lawyer's personal interests when acting in a professional capacity. But loyalty to a client does not require extinguishment of a lawyer's deepest convictions; and there are occasions where exercise of these convictions—even an exercise debatable in professional terms—is protected by the Constitution. Here, on her own time, a

free citizen, Joyce Johnston freely exercised her right to be present at a hearing on a question that touched her conscience. Indeed, the written Department policy in effect at the time Johnston sought leave to attend the hearing provided that all employees of the Department of Health Services could attend such hearings on their own time and could even testify before legislative committees as long as they identified themselves as speaking on their own behalf and not as representatives of the Department.

The non-moving party prevails if that party makes "a showing" sufficient to establish the existence of the elements of her case on which she bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Johnston has made such a showing. Triable issues remain as to the defendants' justification, *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), and as to Johnston's damages.

AFFIRMED.

Before HALL, NOONAN and THOMPSON, Circuit Judges.