956 F.2d 277
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 GLENPOOL UTILITY SERVICE AUTHORITY, a Utility Trust,
Plaintiff-Appellee,
v.
CREEK COUNTY RURAL WATER DISTRICT NO. 2, Defendant-Appellant,
v.
FARMERS HOME ADMINISTRATION, U.S. Department of Agriculture,
United States of America, Third-Party-Defendant.
 No. 91-5047.
 United States Court of Appeals, Tenth Circuit.
 Feb. 25, 1992.
 
 Before LOGAN and BARRETT, Circuit Judges, and KELLY,* District Judge.
 ORDER AND JUDGMENT**
 LOGAN, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiff Glenpool Utility Service Authority (Glenpool) initially brought this action seeking a declaratory judgment establishing that Glenpool had the exclusive right to provide water to an area, annexed by the City of Glenpool, known as Eden South. Defendant Creek County Water District No. 2 (the District) counterclaimed seeking an adjudication declaring its exclusive right to provide water to the Eden South area. Following a trial to the court, the district court denied both parties' requests for exclusive rights. On appeal, this court reversed in part and remanded. Glenpool Util. Servs. Auth. v. Creek County Rural Water Dist. No. 2, 861 F.2d 1211 (10th Cir.1988), cert. denied, 490 U.S. 1067 (1989) (hereinafter Glenpool I ). This court held that 7 U.S.C. § 1926(b)[1] precluded Glenpool from curtailing the District's service in Eden South. Glenpool I, 861 F.2d at 1217.
 
 
 3
 On remand, pursuant to this court's mandate, the district court entered judgment that the District has the right to provide water service to Eden South and enjoined Glenpool from curtailing the service area of the District. That issue has been decided and is not now before this court.
 
 
 4
 What is before this court is the issue of further relief pursuant to 28 U.S.C. § 2202.[2] The District requested that the district court impose a constructive trust on existing water lines relating to the disputed area, award damages in the amount of the water tap fees collected in the area by Glenpool, and award attorneys' fees to the District. The district court denied this relief, and instead declared that although the District and not Glenpool has the right to provide water to the area, Glenpool remains the owner of all water lines and easements relating to the subject property. Thereafter the District appealed.
 
 
 5
 Most of the facts delineated in Glenpool I need not be repeated here. The facts relevant to this appeal are as follows.
 
 
 6
 The City of Glenpool annexed Eden South in 1983. At that time the District had been an FmHA borrower for over seventeen years and the Eden South property had been within the District's territory for over fifteen years. Glenpool concedes that it has never disputed that Eden South is within the District's territory. See Brief of Appellee Glenpool Utility Service Authority at 1. Before annexation Glenpool "was aware that District No. 2 claimed an exclusive right to service the Eden South area with water." Appellant's App. tab 5 at 5 (finding of fact by the district court).
 
 
 7
 About the time of the annexation the developer of Eden South, Jody Sweetin, apparently approached Glenpool and not the District regarding providing water to Eden South. Apparently Glenpool agreed to provide water to Eden South. Sweetin constructed water lines in and to Eden South, including a main supply line that is approximately two and one-half miles long. Pursuant to Glenpool's policy regarding new developments, Sweetin paid the costs of the water lines and dedicated those lines to Glenpool.[3] Glenpool accepted the dedication of the lines and since has provided water service and fire protection[4] to the residents in the area.[5]
 
 
 8
 The record indicates that as the City of Glenpool expanded in the late 1970s and early 1980s and its water demands increased, the District, which had been providing water to Glenpool, was unable to meet the needs of the growing municipality. The record indicates that the District had entered into a contract to sell 2.5 million (later increased to 3.5 million) gallons of water per month to the City, and at one time actually was providing it almost 7 million gallons per month because of growth in demand. Glenpool contends that the District requested and expected Glenpool to construct its own water system to receive water from Tulsa and thus remove itself from being one of the District's users. There is testimony in the record that suggests that Glenpool did cease taking water from the District in 1981 except on an emergency standby basis.
 
 
 9
 As to the District's ability to provide water to Eden South, the district court found that: (1) the District had a water line approximately fifty feet from the Eden South property; (2) the District could not refuse to provide water service to any applicant within its territory; and (3) the District "could and would provide water service to Eden South within a reasonable time following application for same." Appellant's App. tab 5 at 5.
 
 
 10
 The record indicates that Glenpool itself obtained an FmHA loan in 1980 for a water tower and water lines. The City of Glenpool enacted an ordinance, apparently required by FmHA, that Glenpool would provide water service to persons within its boundaries. The FmHA loan was outstanding at the time of the annexation, but was paid off in 1984 before the trial of this case. It appears that Glenpool accepted the dedication of the water lines from the developer sometime in 1983 or early 1984. Thus, at the time Glenpool accepted the dedication of the water lines and began to provide water service to the area the situation was as follows: Eden South was within the territory of both Glenpool and the District; both entities were FmHA borrowers; and both entities were under a similar obligation to provide water service to the area.
 
 
 11
 The key question in this case is whether Glenpool secured an unjust position, by reason of inequitable or unconscionable actions, necessitating the imposition of a constructive trust on the water lines installed by the developer and dedicated to Glenpool. This court has stated that "[a] constructive trust is an equitable remedy that is imposed for the recovery of wrongfully-held property." United States Dep't of Energy v. Seneca Oil Co. (In re Seneca Oil Co.), 906 F.2d 1445, 1450 (10th Cir.1990). To be entitled to imposition of a constructive trust, a party must show either sufficient wrongdoing in acquiring the property or a fiduciary relationship. Id. The Oklahoma Supreme Court has explained the conditions for obtaining a constructive trust as follows:
 
 
 12
 A constructive trust is an involuntary or implied trust by operation of law. It is imposed against one who by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds legal title to property which he ought not, in equity and good conscience, hold and enjoy.
 
 
 13
 Cacy v. Cacy, 619 P.2d 200, 202 (Okla.1980). Thus, a constructive trust is imposed to prevent unjust enrichment. Id. Simple unfairness in allowing the holder of property to retain it is not sufficient to support the imposition of a constructive trust. See Easterling v. Ferris, 651 P.2d 677, 680 (Okla.1982). The determination of whether a constructive trust is warranted is an issue of law that we review de novo. Seneca Oil, 906 F.2d at 1450.
 
 
 14
 To impose a constructive trust in favor of the District on the water lines and easements relating to the subject area Glenpool must have committed " 'active wrongdoing.' " See id. (citation omitted). Furthermore, "[t]he evidence of wrongdoing 'must be clear, unequivocal, and decisive beyond a reasonable doubt.' " Id. (citation omitted).
 
 
 15
 The parties characterize Glenpool's actions in this case in dramatically different ways. Glenpool argues that it acted reasonably in a bona fide dispute because of concerns about the District's ability to supply water and the fact that both parties were FmHA borrowers with similar mandates to provide water service. The District argues that Glenpool's actions were a studied and flagrant violation of the statute because Glenpool knew that Eden South was in the District's territory and knew that the District claimed the exclusive right to provide water service to the area.
 
 
 16
 We believe that Glenpool cannot justify its expansion into the District's territory by arguing that the District did not have adequate water supplies to serve the area. The ability of the District to provide millions of gallons of water to an entity outside the District's territory is a different issue than the District's ability to provide required service within its territory. The latter is the relevant issue. Furthermore, the district court specifically found that the District could serve the area.
 
 
 17
 We find more relevant Glenpool's argument that at the time of the annexation it also was an FmHA borrower and that after the annexation it believed it had the obligation to provide water service to Eden South. Section 1926(b) contains no exemption permitting a municipality that is an FmHA borrower to curtail the service area of another FmHA-funded water district. However, we believe the fact that Glenpool was an FmHA borrower suggests Glenpool officials might reasonably have believed Glenpool legally could provide water to Eden South.
 
 
 18
 We have carefully reviewed the record, including calling up and examining the complete transcripts of the nonjury trial and the hearing on further relief. There is insufficient evidence in the record to enable us to conclude that Glenpool actively sought out and encouraged the developer to construct the water lines and dedicate them to Glenpool. Although it is a close question, the evidence of wrongdoing by Glenpool does not satisfy the strict standard for imposing a constructive trust.
 
 
 19
 On the damages issue the district court's findings of fact will not be disturbed unless clearly erroneous. Fed.R.Civ.P. 52(a). The District argues that the court denied the District's abandoned request for profits from the sale of water but did not address the issue of tap fees. The district court's order, however, refers to "profits from the sale of water and water taps." Appellant's App. tab 7 at 3 (emphasis added). The court denied the request for damages because the District "has made no showing of profits." Id. On appeal, the District has presented insufficient evidence of damages to enable us to conclude "that a mistake has been made." See Cowles v. Dow Keith Oil & Gas, Inc., 752 F.2d 508, 511 (10th Cir.1985), cert. denied, 479 U.S. 816 (1986). This conclusion, however, only relates to profits and tap fees that were before the district court. In view of the District's ongoing right to provide water service to the area the District is not precluded, if necessary, from asserting and proving future damages in a proper case to enforce its right to provide water to the users within its service area.
 
 
 20
 The District also appeals the district court's denial of its request for attorneys' fees. Under the "American Rule" regarding attorneys' fees the prevailing party ordinarily is not entitled to attorneys' fees from the loser. See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975). But attorneys' fees can be awarded if their recovery is authorized by statute or contract. See, e.g., Hall v. Edge, 782 P.2d 122, 129 (Okla.1989). The District argues that an award of attorneys' fees is allowable under § 2202, relying on Security Insurance Co. v. White, 236 F.2d 215 (10th Cir.1956). In Security Insurance we stated that "[i]t is not the primary function of the court in a declaratory judgment proceeding to award damages," but a discretionary award of attorneys' fees, when necessary "to effectuate relief based upon the declaratory judgment rendered," is allowed. Id. at 220. In the instant case the district court denied attorneys' fees on two alternative grounds: (1) it found Security Insurance to be limited to an insurer-insured situation, citing Mercantile Nat'l Bank v. Bradford Trust Co., 850 F.2d 215, 218 n. 9 (5th Cir.1988); and (2) it stated that even if Security Insurance is applicable it would deny fees in view of its other rulings. In this case we need not address whether § 2202 authorizes an award of attorneys' fees. Even under a statute clearly authorizing an award of attorneys' fees, such as 42 U.S.C. § 1988, the decision is committed to the district court's discretion and is reviewed on appeal for abuse of discretion. See, e.g., V-1 Oil Co. v. Wyoming, Dep't of Environmental Quality, 902 F.2d 1482, 1489 (10th Cir.), cert. denied, 111 S.Ct. 295 (1990). Assuming § 2202 authorizes an award, we cannot conclude that the district court here abused its discretion in denying attorneys' fees.
 
 
 21
 We recognize that our decision leaves the parties in an unusual situation. One nonprofit public entity, the District, has the exclusive right (as long as § 1926(b) is applicable), established in Glenpool I, to provide water service to the subject area; but it does not own the water lines currently in place. Another nonprofit public entity, Glenpool, owns water lines in place adequate to serve the subject area; but it does not have the legal right to provide water. Surely there is incentive for these two nonprofit public bodies to work out a solution that would not require the District to build duplicate lines. We decide only that Glenpool's acts were not sufficiently wrongful to meet the strict legal standard that would require it to transfer ownership of the existing water lines to the District.
 
 
 22
 AFFIRMED.
 
 
 
 *
 Honorable Patrick F. Kelly, District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The statute applies because the District received a loan from the Farmers Home Administration (FmHA). The statute provides:
 The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.
 7 U.S.C. § 1926(b). The Fifth Circuit has stated that this statute "unambiguously prohibits any curtailment or limitation of an FmHA-indebted water association's services resulting from municipal annexation or inclusion." City of Madison, Miss. v. Bear Creek Water Ass'n, Inc., 816 F.2d 1057, 1059 (5th Cir.1987), cited with approval in Glenpool I, 861 F.2d at 1214.
 
 
 [2]
 The statute provides:
 Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.
 28 U.S.C. § 2202.
 
 
 [3]
 The District has a similar policy requiring developers to construct new water lines and dedicate them to the District
 
 
 [4]
 It is clear that Glenpool has the right to provide fire protection in the area. See Rural Water Dist. # 3 v. Owasso Utils. Auth., 530 F.Supp. 818, 823 (N.D.Okla.1979); see also Glenpool I, 861 F.2d at 1216 (municipality can regulate water lines for fire hydrants)
 
 
 [5]
 The record suggests that 37 homes had been built by 1989 but only seven or nine families were living in Eden South