**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 2 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

PITTSBURG COUNTY RURAL WATER
DISTRICT NO. 7, an agency and legally
constituted authority of the State of Oklahoma,

    Plaintiff-Appellant,

v.

CITY OF MCALESTER, a municipality; THE
MCALESTER PUBLIC WORKS AUTHORITY, a
public trust; KENNETH W. SHERILL; LINDA F.
SHERILL; CITY OF MCALESTER; BAR-19;
BLESSINGS CORP., d/b/a Edison Plastics; MIG,
INC.; SOUTHWEST OKLAHOMA BOX
COMPANY; TRI-CAT, INC.; SIMMONS
POULTRY FARMS, INC.; DENNIS DEFRANGE;
TERRY KINYON; PITTSBURG COUNTY
REGIONAL EXPOSITION AUTHORITY;
PITTSBURG COUNTY BOARD OF
COMMISSIONERS, a/k/a Board of County
Commissioners of Pittsburg County, Oklahoma;
H.G. GILLIAM; BILL WEBBER; OBEN WEEKS;
THUNDERCREEK GOLF COURSE TRUST
AUTHORITY,

    Defendants-Appellees.

_____

OKLAHOMA MUNICIPAL LEAGUE;
NATIONAL LEAGUE OF CITIES,

    Amici Curiae.

No. 98-7148
(E.D. Okla.)
(D.Ct. No. 97-CV-185-B)

**ORDER AND JUDGMENT**[*]

---

Before **BALDOCK** and **BRORBY**, Circuit Judges, and **REAVLEY**,[**] Senior Circuit Judge.

---

Plaintiff-Appellant Pittsburg County Rural Water District No. 7 (District) appeals the district court's entry of summary judgment in favor of Defendants-Appellees City of McAlester, Oklahoma, and McAlester Public Works Authority, a public trust (City).[1] The District brought this action under 42 U.S.C. § 1983, claiming the City violated the District's exclusive right, obtained pursuant to 7 U.S.C. § 1926(b), to provide water to customers within its service area. The

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Thomas M. Reavley, Senior Circuit Judge for the Fifth Circuit, sitting by designation.

[1] The suit contains multiple additional defendants, best described as the District's potential customers who wish to receive their water from the City. The Board of County Commissioners of the County of Pittsburg is also a defendant. Unless specifically identified, we will refer to the defendants collectively as "the City." In addition, we note the Oklahoma Municipal League, in conjunction with the National League of Cities, filed an Amicus Curiae brief supporting the City. We have considered the thoughtful, reasoned arguments therein, but choose not to address them directly here. *See Sequoyah County Rural Water Dist. No. 7 v. Town of Muldrow*, 191 F.3d 1192, 1194 n.1 (10th Cir. 1999), *cert. denied*, 120 S. Ct. 1532, 120 S. Ct. 1548 (2000).

District also sought declaratory and injunctive relief in relation to: (1) the City's sale of water to the District; (2) the City's sale of water to the District's claimed customers; and (3) the County Commissioners' efforts to deannex portions of the disputed area from the District's territory. Finally, the District brought several related state claims and sought various damages for past and future violations of § 1926(b). We exercise jurisdiction under 28 U.S.C. § 1291 and reverse.

## BACKGROUND

The facts of this case are remarkably similar to those of our recent case, *Sequoyah County Rural Water Dist. No. 7 v. Town of Muldrow*, 191 F.3d 1192 (10th Cir. 1999), *cert. denied*, 120 S. Ct. 1532, 120 S. Ct. 1548 (2000). In this case, the Board of County Commissioners of Pittsburg County, Oklahoma, incorporated the District on April 26, 1966 to "develop[] and provid[e] an adequate rural water supply ... to serve and meet the needs of rural residents within the territory of the district."[2] Okla. Stat. Ann. tit. 82, § 1324.3. In order to help rural water districts carry out that mission, Oklahoma law authorizes districts to borrow money from the federal government. *See* Okla. Stat. Ann. tit. 82, § 1324.10(A)(4). In turn, the federal government makes loans available to

---

[2] The parties agree all the areas involved in this dispute fall within the District's territory.

districts pursuant to 7 U.S.C. § 1926(a).

The District first took advantage of these federal loans, administered by the Farmer's Home Administration (FmHA),[3] in 1967 by borrowing $300,000. The District remained continuously indebted to FmHA until February 24, 1989, when the District borrowed funds from the First National Bank and Trust Co. of McAlester, Oklahoma, in order to repurchase its outstanding debt to FmHA.[4] Subsequent to repurchase, the notes were marked "SATISFIED IN FULL – FmHA." The District is once again indebted to FmHA pursuant to a loan obtained on June 15, 1994.

Periods of indebtedness are important because § 1926(b) protects rural water districts indebted to FmHA from competition or other encroachments in their service area:

> The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area

---

[3] The water loan program is now administered by the Rural Utilities Service, however we will continue to refer to FmHA throughout this order and judgment.

[4] At this point, the District was indebted to FmHA on two notes, with principle balances of $237,661.73 and $227,789.21 respectively. The repurchase occurred at a discounted rate pursuant to a government debt buy-back program designed to reduce the federal deficit. *See Sequoyah*, 191 F.3d at 1195, 1198.

served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit as a condition to continuing to serve the area served by the association at the time of the occurrence of such event.

7 U.S.C. § 1926(b). Congress included this language "to assist in protecting the territory served by such an association facility against competitive facilities, which might otherwise be developed with the expansion of the boundaries of municipal and other public bodies into an area served by the rural system." S. Rep. No. 87-566, *reprinted in* 1961 U.S.C.C.A.N. 2243, 2309. This provision not only encourages rural water development, but also provides the federal government greater security in its loans. *See Sequoyah*, 191 F.3d at 1196. In order to receive the protection of § 1926(b), "a water association must (1) have a continuing indebtedness to the FmHA and (2) have provided or made available service to the disputed area." *Id*. at 1197. Therefore, our analysis necessarily hinges on determining whether the City began providing water to customers in the District's territory while the District was indebted to FmHA, and if so, whether the District "made service available" to those customers at that time.

Based on the dates of the District's various loans, the disputed customers can be split into three camps: (1) those the City first served during the original

period of the District's indebtedness, July 3, 1967 to February 24, 1989; (2) those first served between February 24, 1989 and June 15, 1994; and (3) those first served after June 15, 1994, when the District incurred its latest debt to FmHA. While this dispute includes several smaller properties, the bulk of the suit involves the individual businesses inhabiting an industrial park outside McAlester. The parties agree the City began providing water to at least one industrial park resident – Edison Plastics – during the first time period. The City extended service to two additional businesses during the second period: Southern Star (Simmons Foods) and Tri-Cat. Finally, at least five businesses were added as City customers after June 15, 1994: Southeastern Oklahoma Box, Central Garden, BAR-19 Foods, Vision Manufacturing, LLC (Hawk Boats), and Quality Fishing, Inc.

Recognizing these stipulations, the district court granted the City's summary judgment motion, denied the District's competing summary judgment motion, and granted various motions to dismiss via two separate orders issued November 26, 1997 and September 30, 1998. The district court's decisions, while dealing with a plethora of issues, focused on the two remaining elements the District needed to prove in order to qualify for § 1926(b) protection: the District's indebtedness to FmHA, and the District's ability to make service

available to the customers in question.

The district court first examined the impact of the District's repurchase of its debt in 1989 and determined any protections afforded the District under § 1926(b) were extinguished at that time along with its indebtedness to FmHA. Because the District became indebted to FmHA again in 1994, the district court decided the only actionable claims at issue were based on actions taken by the City after June 15, 1994. The court then turned to the issue of whether the District had made service available, and found the District had not done so because it did not have a line in proximity to the disputed areas "capable of delivering water in sufficient quantities to service the disputed territory." In addition, the court based its decision on the District's assertion it will require individual customers to pay for any line extensions needed to provide service. Based on these findings, the district court determined the District did not qualify for the protections of § 1926(b).[5]

---

[5] To further complicate matters, during the pendency of the current suit the Pittsburg County Board of Commissioners ordered the deannexation of the entire industrial park, as well as other disputed areas, from the District's territory. This action raises an important issue yet to be addressed by the courts: Does § 1926(b) preempt local decisions, made by the state government entity empowered to create a water district's original service area, to reduce the district's service area? The district court did not reach this issue because of its finding the District did not meet the requirements of § 1926(b). Thus, this is the first of several questions we will not reach here, but which may need to be addressed by the district court on remand.

DISCUSSION

We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.

*Simms v. Oklahoma ex. rel. Dep't of Mental Health & Substance Abuse Serv.*, 165 F.3d 1321, 1326 (10th Cir.) (further internal citations and quotation marks omitted), *cert. denied*, 120 S. Ct. 53 (1999). When reviewing cross-motions for summary judgment, "our review of the record requires that we construe all inferences in favor of the party against whom the motion under consideration is made," in this case the District. *Andersen v. Chrysler Corp.*, 99 F.3d 846, 856 (7th Cir. 1996).

I.  7 U.S.C. § 1926(b) Claim

The district court entered its orders in this case without the benefit of our recent *Sequoyah* decision, and both parties agreed at oral argument *Sequoyah* is dispositive of many of the issues before us in this appeal. Therefore, we will resist the temptation to exhaustively repeat the thorough analysis put forth in that opinion and keep our discussion brief.

As in *Sequoyah*, the parties here disagree about the effect of the District's repurchase of its debt from FmHA. The District argues the repurchase had no effect, that they were continuously indebted to FmHA from the time of the first loan in 1967, and therefore they satisfy the first requirement of § 1926(b) protection for the entire period in question. The City responds by defending the district court's ruling that the repurchase extinguished the District's debt to FmHA, and therefore the District cannot bring claims for actions taken by the City prior to June 15, 1994, when the District again became indebted to FmHA.[6] We rejected both arguments in *Sequoyah*.

The District's position is flawed because it fails to recognize the significance of the repurchase of the notes. Section 1926(b) protection "does not extend ... to issuer repurchases when the underlying debt to the government is

---

[6] While the City agrees with the district court that actions taken prior to June 15, 1994 cannot be included under the protections of § 1926(b), the City finds fault with the district court's determination of the scope of actionable conduct after this date. The City argues the only actionable events under § 1926(b) are the establishment of lines and initial provision of water to a customer. Therefore, § 1926 protection is unavailable to the District for any customer added prior to June 15, 1994. The district court disagreed, finding the City could violate § 1926 by continuing to provide water to a protected area after June 15, 1994, even if the initial service began prior to the period of indebtedness. We refuse to address the City's argument because the district court's ultimate decision the District does not qualify for § 1926 protection was based on other grounds, and the City failed to raise this issue in a cross-appeal. *See* cross-appeal discussion, *infra*.

simultaneously canceled or retired." *Sequoyah*, 191 F.3d at 1200. The District's debt was discharged in this case as evidenced by the "SATISFIED IN FULL" marks on the notes. *See id.* Therefore, the District was not indebted to FmHA from February 24, 1989, the date of the repurchase, to June 15, 1994, the date of the most recent loan, and cannot claim § 1926(b) protection for this time period.

While the District's position ignores the impact of the repurchase, the City and the district court totally disregard the first period of indebtedness. Adopting this approach "would defeat the purpose of [§ 1926(b)] because a water association which repurchased ... its debt but which otherwise met the statutory requirements would have no recourse for encroachments that occurred or began while it was indebted to the government. Such a rule clearly would defy the language of § 1926(b)." *Id.* Because the district court determined the repurchase extinguished the District's § 1926(b) protection for the preceding period of indebtedness, we must reverse and remand for further proceedings consistent with *Sequoyah* and this order and judgment.

We must also reverse and remand because the district court applied the wrong standard to determine whether the District made service available to the disputed customers. We have stated the "made service available" requirement of

§ 1926(b) "should focus primarily on whether the water association has in fact 'made service available,' *i.e.*, on whether the association has proximate and adequate 'pipes in the ground' with which it has served or can serve the disputed customers within a reasonable time." *Id*. at 1203. In making this inquiry, we have emphasized "[d]oubts about whether a water association is entitled to protection from competition under § 1526(b) should be resolved in favor of the FmHA-indebted party seeking protection for its territory." *Id.* at 1197. While the district court correctly chose to apply the "pipes in the ground" test, it did so in an inappropriately restrictive manner.

The court stated the "pipes in the ground" test required more than a line in place proximate to the disputed area, but also required "that line [] be capable of delivering water in sufficient quantities to service the disputed territory." The court went on to hold that "[g]iven the fact that [the District] does not have adequate lines in place to service the [industrial park], this Court finds that it has not made service available as that term is intended under § 1926(b)." We agree the adequacy of the District's facilities, or its "capacity to provide water service to a given customer," is an important aspect of the "pipes in the ground" test. *Id*. at 1203. However, the district court seems to have limited its examination to the District's ability to provide service today, when "a water association meets the

-11-

'pipes-in-the-ground' test by demonstrating 'that it has adequate facilities within or adjacent to the area to provide service to the area *within a reasonable time after a request for service is made.*'" *Id*. (quoting *Bell Arthur Water Corp. v. Greenville Util. Comm'n*, 173 F.3d 517, 526 (4th Cir. 1999)) (emphasis added). The District provided a sworn affidavit from an expert who stated the time (ranging from 0 to 90 days) it would take for the District to install the appropriate facilities for the various disputed customers. At the very least, the district court must address the reasonableness of the time estimates on remand. We note the evidence may present genuine issues of material fact, thus rendering a summary disposition inappropriate.[7] *See id*. at 1203-06.

II. Injunctive Relief

---

[7] We also note the district court, in determining the District has not made service available to the disputed areas in its September 30, 1998 Order, seems to emphasize the fact the District will require the disputed customers to pay for some facility improvements in order to provide service. While certainly a relevant factor for determining the District's ability to provide service in a reasonable time, requiring the customer to foot the bill for basic utility infrastructure is not entirely unheard of, at least in regard to new developments, nor is it *per se* unreasonable. *See North Alamo Water Supply Corp. v. City of San Juan*, 90 F.3d 910, 919 n.36 (5th Cir.) (noting general practice in Texas of developers incurring original cost of installing at least a portion of new water system), *cert. denied*, 519 U.S. 1029 (1996); *Glenpool Util. Serv. Auth. v. Creek County Rural Water Dist.*, 956 F.2d 277, 1992 WL 37327 at *1 & n.3 (10th Cir. 1992) (unpublished decision) (city and water district both had policy requiring developer to pay costs of water lines and dedicate the lines to respective water provider). This is obviously an area in need of further factual development on remand.

In its First Amended Complaint, the District stated it acquires all of its water from the City, and claimed the City threatened to stop these sales. The District also claimed it could not obtain a sufficient water supply to meet its customers' needs from other sources. The District argued the City's termination of water sales, if carried out, would violate federal antitrust statutes, and thus sought injunctive relief to prevent such termination. The district court rejected this argument, stating the Local Government Antitrust Act of 1984, specifically 15 U.S.C. § 35,[8] excludes cities from civil liability under federal antitrust laws. The court's statement is accurate, as far as it goes; however, it was error to conclude 15 U.S.C. § 35 shields municipalities from claims for injunctive relief. *See Thatcher Enter. v. Cache County Corp.*, 902 F.2d 1472, 1477 (10th Cir. 1990) (§ 35 "does not preclude declaratory or injunctive relief."). *See also Cohn v. Bond*, 953 F.2d 154, 158 (4th Cir. 1991), *cert. denied*, 505 U.S. 1230 (1992); *Sandcrest Outpatient Serv., P.A. v. Cumberland County Hosp. Sys., Inc.*, 853 F.2d 1139, 1142 (4th Cir. 1988); *Montauk-Caribbean Airways, Inc. v. Hope*, 784 F.2d 91, 95 (2d Cir.), *cert. denied*, 479 U.S. 872 (1986). While the court briefly discussed the parameters of the closely related doctrine of state action immunity,

---

[8] The text of 15 U.S.C. § 35 provides, in relevant part: "No damages, interest on damages, costs, or attorney's fees may be recovered under section 4, 4A, or 4C of the Clayton Act (15 U.S.C. 15, 15a, or 15c) from any local government, or official or employee thereof acting in an official capacity."

-13-

which could provide an alternative ground for denying the District's claims, its decision rested solely on this misinterpretation of § 35. Therefore, the district court must also reexamine the injunction issue on remand, with a focus on whether the City qualifies for state action immunity under the unique facts of this case.

The district court did not reach several issues, most notably whether the county commissioners' deannexation orders are preempted by § 1926(b), because the court determined the District did not qualify for § 1926(b) protection. While we agree with the district court's observation that "federal preemption may preclude the use of the state statute providing for deannexation so long as the [District] qualifies for the protections of § 1926(b)," we decline the District's invitation to decide this and other issues, including what remedy, if any, is appropriate. These issues are best left to the district court to consider in the first instance. [9]

In addition, we note in its reply brief the City takes issue with several

_____

[9] The district court also declined to exercise supplemental jurisdiction over the various state law claims after making its determination the District lost on the federal claims. The district court may wish to revisit that decision and reach the merits of the state law claims depending on how the case develops on remand.

district court rulings dealing with statute of limitations issues and the availability of § 1983 relief under the facts of this case.  We have not considered these arguments because "a party may not attack a decision with a view toward enlarging his or her own rights or lessening the rights of an adversary absent a cross appeal."  *Hansen v. Director, OWCP*, 984 F.2d 364, 367 (10th Cir. 1993). *See Lombardi v. SBA*, 889 F.2d 959, 962 (10th Cir. 1989) (statute of limitations question not properly before court when appellees did not raise issue on cross-appeal).

Accordingly, we **REVERSE** the district court's Orders and **REMAND** for further proceedings consistent with this Order and Judgment.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge