Kwan Wah LIU, Plaintiff, Appellant,

v.

Richard M. PHILLIPS, Defendant,
Appellee.

James D. Goldman, Defendant.

No. 99–2336.

United States Court of Appeals,
First Circuit.

Argued Oct. 3, 2000.

Decided Nov. 28, 2000.

William VanLonkhuyzen with whom
David Duncan and Zalkind, Rodriguez,
Lunt & Duncan were on brief for appellant.

Mary Jane Walsh with whom Joseph W.
Monahan, III and Monahan & Padellaro
were on brief for appellee.

Before BOUDIN, Circuit Judge, CYR,
Senior Circuit Judge, and LYNCH, Circuit
Judge.

BOUDIN, Circuit Judge.

This appeal involves a claim of qualified
immunity and grows out of the following
facts. On January 21, 1999, a violent
house invasion occurred at a home in Malden, Massachusetts. The victims, the
Chan family, told Malden police that three
young Asian males entered their home and
the Chans provided descriptions. One of
the persons described, Jian Chu Li ("Li"),
was found nearby and arrested. The police also learned that others in the group
(there were approximately five but only
three entered the home) had left the scene
in a small, light-colored car.

The next morning, Lt. Richard Phillips
of the Malden police learned that seven
Asians had appeared at 10 a.m. at the
Malden district court, apparently for Li's
arraignment. Phillips then called James
Goldman, a supervisory special agent of
the Immigration and Naturalization Service ("INS") who was working on Asian

gang activity with the Boston police. Goldman joined Phillips and the two men then learned that four of the Asians seen at Li's arraignment (all young males) had left in a light-colored Geo Prizm, a subcompact car. By police radio, Phillips asked that the car be located and detained.

Other officers discovered and halted the car as it was about to be driven away from a fast-food restaurant and ordered the four men out of the car for a *Terry* stop frisk for weapons, *see Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). One of the four was Kwan Wah Liu ("Liu"). When Phillips and Goldman arrived at the scene, Goldman recognized two of the men as individuals he thought were involved with a Quincy, Massachusetts, gang, and began to question all four about their immigration status. They all claimed to be permanent residents but none had on his person an alien registration certificate, commonly known as a "green card."

Under federal law, "[e]very alien, eighteen years of age and over, shall at all times carry with him" an alien registration certificate. 8 U.S.C. § 1304(e) (1994). Liu said that he had a green card but that his parents did not allow him to carry it for fear he might lose it. Liu was in fact only seventeen but he did not mention this, and neither Phillips nor Goldman asked him his age. Instead, Goldman asked Phillips to place all four men under arrest for violating this provision; as they were riding back to the station, Goldman cited the pertinent code section to Phillips, who later testified that, at the time of the arrest, he knew little about the immigration laws and did not know that failure to carry a green card was an offense.

At the police station, Phillips handled Liu's booking which included completion of a booking sheet that gave Liu's date of birth. Goldman and another INS agent questioned the group about their immigration status while Phillips had photographs of the four sent to Malden Hospital. There, two members of the Chan family picked Liu out of a photo array as one of the home invaders. Liu was thereafter charged by Malden police with the home invasion and a detainer was lodged against him by the INS.

Eventually, the home invasion case was dismissed by the state court after it suppressed the Chan's identification of Liu as the fruit of an unlawful stop and arrest. Liu in turn brought the present civil action against Phillips and Goldman in federal district court. His complaint sought, *inter alia,* to recover against both officers for unlawful seizure and detention; the claim against Phillips was based on 42 U.S.C. § 1983 (1994) and that against Goldman was framed as a *Bivens* action. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Liu also made state law claims against both officers.

Phillips (but not Goldman) moved for summary judgment on grounds of qualified immunity. The district court granted the motion as to the federal claim and dismissed the state claims without prejudice, 28 U.S.C. § 1367(c)(3) (1994). In a thoughtful decision, the court held that there had been reasonable suspicion for the *Terry* stop; that the arrest for failure to produce a green card lacked a reasonable basis because Liu was under eighteen; but that Phillips (but not Goldman) was still protected by qualified immunity given his reliance on Goldman and his ignorance of the complex immigration laws.[1]

Liu has now appealed from the judgment in favor of Phillips, arguing that the original *Terry* stop was not based on reasonable suspicion and that Phillips was not entitled to qualified immunity as to the

---

**1.** The *Bivens* claim against Goldman was dismissed when the U.S. Attorney certified under the Westfall Act, 28 U.S.C. § 2679(d) (1994), that Goldman was acting within the scope of his duties, and the state claims against him were thereafter dismissed by consent. Liu has not appealed from this judgment as to Goldman.

arrest. Nothing need be added to the district court's excellent discussion of the *Terry* stop issue, which we affirm in all respects. As for qualified immunity, we agree with practically everything that the district court said. But, as the issue is a significant one and our emphasis is slightly different, it may be useful to add a few words.

█ Qualified immunity is available to officials who err in their duties so long as the mistake is one that a "reasonable" officer could have made, *Berthiaume v. Caron,* 142 F.3d 12, 15 (1st Cir.1998); and the standard is favorable to the officer, protecting "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Yet the Supreme Court has said that for qualified immunity purposes, a competent public official is also expected ordinarily to "know the law governing his conduct" so far as it may be "clearly established." *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *accord Wilson v. Layne,* 526 U.S. 603, 614–15, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); *United States v. Lanier,* 520 U.S. 259, 270, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997).

*Harlow* left open the possibility that there might be "extraordinary circumstances" where an official, acting in ignorance of clearly established law, might still be entitled to qualified immunity. 457 U.S. at 819, 102 S.Ct. 2727; *see also Fernandez v. Leonard,* 784 F.2d 1209, 1216 (1st Cir.1986); *Lowe v. Letsinger,* 772 F.2d 308, 314 (7th Cir.1985). The courts of appeal have occasionally taken up this invitation; in one case, a state official relied on the advice of a state assistant attorney general in conducting a warrantless inspection of land in aid of state environmental laws, *see V–1 Oil Co. v. Wyoming Dep't of Envtl. Quality,* 902 F.2d 1482, 1488–89 (10th Cir.), *cert. denied sub nom. V–1 Oil Co. v. Gerber,* 498 U.S. 920, 111 S.Ct. 295,

112 L.Ed.2d 249 (1990). It is not easy to find many like examples. *See* 902 F.2d at 1489 (compiling and comparing cases).

█ Obviously few, if any, police officers or federal agents have memorized the thousands of code sections and regulations that make up the full compendium of criminal law violations and infractions. Still, in general, a police officer or agent is not supposed to make an arrest *unless* he or she is aware of an offense on the books for which the subject may reasonably be charged. *See Pierson v. Ray,* 386 U.S. 547, 557, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *cf. Fernandez,* 784 F.2d at 1217. Here, of course, Phillips did not even claim to know at the outset that failure to carry a green card was an offense; but, by the same token, it was not Phillips but Goldman who made the decision to make the arrest.

█ Accordingly, this case primarily presents the question whether and when an officer who participates in an arrest, as Phillips unquestionably did, may reasonably rely on a fellow officer or agent who does (or by position should) know the substantive law and the facts and who (based on that knowledge) asserts that an offense has been committed. Police officers without complete knowledge of the *facts* regularly participate in arrests ordered or authorized by superiors or by fellow officers. Where the authorizing officer has made a factual mistake but the mistake is not apparent, immunity for the officer who reasonably assisted is well settled. *United States v. Hensley,* 469 U.S. 221, 232, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985).

The outcome should not be different where the agent who directs or authorizes the arrest has made a mistake of law equally invisible to the assisting officer. The former may well be liable for the decision to arrest,[2] but a police force could not function without reasonable reliance on the statements and efforts of others,

---

**2.** There is no doubt that Goldman should have known the law (and perhaps did so).

Whether his failure to ask Liu his age was unreasonable is a different question.

*Whiteley v. Warden,* 401 U.S. 560, 568, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *accord Hensley,* 469 U.S. at 229–31, 105 S.Ct. 675. In the few pertinent cases we could find, officers who reasonably relied on superior officers have been held to be entitled to qualified immunity even if the officer who gave the direction acted on a misapprehension as to the law. *Bilida v. McCleod.* 211 F.3d 166, 174–75 (1st Cir.2000); *Moore v. Marketplace Restaurant, Inc.,* 754 F.2d 1336, 1348 (7th Cir.1985).

It is at this point that Phillips' own mistake of law becomes pertinent, but with a twist. The issue is not whether one error of law (ignorance of the eighteen or older condition in the statute) immunizes Goldmans decision to arrest, but whether a related error (complete ignorance of the green card offense) makes unreasonable Phillip's decision to comply with Goldmans request for assistance. On these facts, the answer is surely no. Quite apart from their complexity, *see Castro-O'Ryan v. Dep't of Immigration and Naturalization,* 847 F.2d 1307, 1312 (9th Cir.1987), the federal immigration laws are not ordinarily enforced by local police and there was nothing unnatural in Phillips ignorance nor untoward in his behavior in assisting Goldman.

An unlawful arrest is always to be regretted. Liu has already obtained dismissal of the charges against him for home invasion and, but for the Westfall Act (see note 1, above), he might also have succeeded in holding Goldman liable for damages. But to the practical question whether Phillips himself did "anything wrong," most people would likely say no. Happily, the law of qualified immunity is in accord.

The judgment of the district court is affirmed. Each side will bear its own costs on this appeal.

*It is so ordered.*