**Peter LOGIODICE, et al., Plaintiffs**

**v.**

**TRUSTEES OF MAINE CENTRAL INSTITUTE, et al., Defendants**

No. 00–CV–246–B–S.

United States District Court, D. Maine.

March 5, 2001.

Richard L. O'Meara, Murray, Plumb & Murray, Portland, ME, for Plaintiffs.

Bruce C. Mallonee, Edmond J. Bearor, Luke M. Rossignol, Rudman & Winchell, Bangor, ME, for Defendants.

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

SINGAL, District Judge.

Before the Court is a Motion to Dismiss by Defendants Maine School District No. 53 ("MSAD 53") and Terrance A. McCannell, Superintendent of MSAD 53 (Docket # 5), as well as a separate Motion to Dismiss by Defendants Maine Central Institute, Douglas Cummings, and John Marquis ("MCI Defendants") (Docket # 11).

For the reasons discussed below, the Court DENIES both motions to dismiss.

## I. STANDARD OF REVIEW

Generally, a court may dismiss a claim under Fed.R.Civ.P. 12(b)(6) only if it clearly appears that, on the facts alleged, the plaintiff cannot recover on any viable theory. *See Gonzalez–Morales v. Hernandez–Arencibia*, 221 F.3d 45, 48 (1st Cir.2000). When considering a motion to dismiss, a court must accept as true all of a plaintiff's well-pleaded factual averments and indulge every reasonable inference in the plaintiff's favor. *See Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir.1990). Pursuant to this standard, the Court lays out the facts of the case below.

## II. BACKGROUND

During the 1999–2000 school year, Plaintiff Zachariah Logiodice ("Zach") was a seventeen year-old student residing within MSAD 53. Because MSAD 53 does not operate a public high school, Zach attended Maine Central Institute ("MCI"), a private high school, pursuant to a contract between MSAD 53 and MCI. Prior to the events giving rise to this case, Zach was an eleventh grade student at MCI with no prior suspensions.

On January 19, 2000, a MCI teacher asked Zach to turn over a soft drink that Zach had inappropriately carried into the school gymnasium. Zach responded to the teacher's request with profane language prompting the teacher to alert MCI's Dean of Students, Mr. Marquis ("Dean Marquis"). Dean Marquis arrived at the gymnasium and questioned Zach regarding his alleged use of profanity. After Zach admitted using profane language, Dean Marquis asked Zach to leave the gymnasium. Zach refused, saying he did not want to miss his midterm exam that was about to start. As Dean Marquis left the room, Zach pushed aside the table at which he was sitting, stood up and directed profane language at Dean Marquis.

Dean Marquis returned to his office and immediately called Dawn Logiodice, Zach's mother. Mrs. Logiodice came to the school and met with Dean Marquis. At this meeting, Dean Marquis told Mrs. Logiodice that Zach would be suspended for ten days for using profanity and refusing to comply with the requests of teachers and administrators. Zach was allowed to complete his midterm before his mother took him home.

Later that same day, Zach's parents met with Dean Marquis again. The Logiodices asked Dean Marquis to reconsider the length of Zach's suspension and also asked that their son be allowed to participate in extra curricular activities while out on suspension. Dean Marquis refused both requests. Additionally, Dean Marquis suggested that the Logiodices consider finding Zach a counselor in light of his earlier conduct. The Logiodices agreed to consider this suggestion.

In a letter dated January 21, 2000, Dean Marquis informed the Logiodices that Zach would be suspended until at least February 2, 2000, a period of ten school days. Additionally, Dean Marquis explained that Zach would not be allowed to return to school until he "had a safety evaluation with a psychologist or psychiatrist." (*See* Pl.Ex. 1 (attached to Docket # 1).)

According to the Logiodices, obtaining the requisite safety evaluation for Zach proved difficult because their health insurance provider required them to obtain a referral. In fact, Mrs. Logiodice received a referral on January 28, 2000 for four licensed therapists. None of the approved therapists were able to meet with Zach prior to February 2, 2000. In light of the

inability to obtain a safety evaluation during the ten-day suspension, Mr. Logiodice spoke with Dean Marquis on February 1, 2000 and asked that Zach be allowed to return to school the following day. Dean Marquis explained that the safety evaluation remained a prerequisite to Zach's return to MCI. MCI's Principal, Mr. Cummings ("Principal Cummings") confirmed this requirement.

On the afternoon of February 1, 2000, the Logiodices met with the Superintendent of MSAD 53, Mr. McCannell ("Superintendent McCannell"), to discuss Zach's continuing suspension. As a result of this meeting, Superintendent McCannell wrote a letter to Principal Cummings dated February 3, 2000. (*See* Pl.Ex. 2 (attached to Docket # 1).) In this correspondence, Superintendent McCannell expressed concern that Zach's continued suspension violated his due process rights and that MCI should provide "appropriate services for the student" pursuant to the contract between MSAD 53 and MCI. (*Id.*)

On February 2, 2000, Mrs. Logiodice obtained an appointment for Zach with Dr. Lester. The appointment was scheduled for February 7, 2000, Dr. Lester's earliest available opening. When Mrs. Logiodice contacted Principal Cummings to explain that Zach would not be able to undergo a safety evaluation until February 7th, Principal Cummings insisted that Zach could not return to school until after a safety evaluation was completed. He refused to hold a hearing on the continued suspension or provide Zach with tutoring in the interim. In fact, Principal Cummings told Mrs. Logiodice that Maine's law limiting administrative suspensions to ten school days absent school board action did not apply to public students at MCI.

On February 7, 2000, Zach and the Logiodices met with Dr. Lester. Dr. Lester concluded he could not perform the safety evaluation requested by MCI although he agreed to see Zach for a series of counseling sessions. However, at the end of the first meeting, Dr. Lester expressed his professional opinion that Zach's prior behavior did not suggest in any way that Zach was a danger to himself or others.

On the evening of February 7, 2000, the Logiodices attended a regularly scheduled meeting of the MSAD 53 School Board. At this public meeting, the Logiodices told the Board that MCI and MSAD 53 had violated and were continuing to violate their son's due process rights as well as Maine law. In response, Superintendent McCannell agreed that Zach's due process rights had been violated. The Board took no immediate action in response to the Logiodices' comments.

On February 8, 2000, Superintendent McCannell and Principal Cummings contacted the Logiodices and said that Zach could return to school after his second appointment with Dr. Lester, provided that Dr. Lester agreed to meet with school officials. Zach had his second appointment with Dr. Lester on February 9, 2000. On February 11, 2000, Dr. Lester, along with Zach Logiodice and his parents, met with Dean Marquis, Superintendent McCannell and several MCI teachers. As a result of the meeting, Zach was permitted to return to school on Monday, February 13, 2000. However, in the interim, Zach had been denied educational services for seventeen school days without the opportunity for a hearing.

## III. DISCUSSION

■ On the basis of these facts, Plaintiffs press claims against Defendants MSAD 53 and Superintendent McCannell alleging violations of 42 U.S.C. § 1983 (Counts IV & V) as well as violations of Zach's rights under the Maine Constitution

(Counts IX & X).[1] Plaintiffs also allege violations of 42 U.S.C. § 1983 by each of the MCI Defendants in (Counts I, II & III). Additionally, they assert claims against the MCI Defendants for violations of Zach's rights under the Maine Constitution (Counts VI, VII & VIII). Finally, in Count XI, Plaintiffs seek a declaratory judgment that the provisions of 20–A M.R.S.A. § 1001(9) apply to a private school that enrolls public students pursuant to a contract with a public school district. In order to put Plaintiffs' claims in context, the Court pauses to briefly explain some of the unique characteristics of Maine's educational system.

## A. Public Education in Maine

Pursuant to Maine statute, "every person within the age limitations set by state statutes shall be provided an opportunity to receive the benefits of a free public education." 20–A M.R.S.A. § 2; *see also* Me. Const. art. VIII, pt. 1, § 1 ("[T]he Legislature are authorized, and it shall be their duty to require, the several towns to make suitable provision, at their own expense, for the support and maintenance of public schools."). School districts in Maine provide the opportunity for a free public education in a variety of ways. Given the rural nature of many Maine communities, it is not feasible for all school districts to operate their own public schools for each grade. Maine statute specifically recognizes this possibility and provides for various alternative means of providing educational services including allowing school districts to contract for school privileges with "contract schools" or pay tuition for their eligible students to attend either public or private schools of the individual student's choosing. 20–A M.R.S.A. §§ 5203 & 5204.

In a recent case upholding the constitutionality of Maine's tuition program, the Maine Law Court described how these different options are utilized by Maine school districts. *See Bagley v. Raymond Sch. Dept.*, 728 A.2d 127, 130 (Me.1999). In relevant part, the Maine Law Court explained

> Approximately half of the school districts in Maine satisfy their obligation by operating public elementary and secondary schools. The other half satisfy their obligation either wholly through Maine's tuition program, or by operating some schools, usually elementary, and paying tuition for students to attend only those schools which the school districts do not operate. Nearly 14,000 students attend public and approved private schools under the tuition program and approximately $70 million in public funds · is expended each year by the Maine Department of Education and local school districts on tuition for students to attend these schools.

*Id.* In their complaint, Plaintiffs state that "[p]ursuant to a contract dated September 16, 1991, MCI is obligated to accept and provide a comprehensive program of studies for all students who are legal residents of MSAD No. 53 and who are academically qualified to attend grades nine, ten, and eleven." (Compl. ¶ 9 (Docket # 1).) Thus, on the current record it appears that MCI is the contract school for all high school aged students within MSAD 53. *See* 20–A M.R.S.A. § 5204(3).

---

1. Defendants do not offer separate arguments regarding Plaintiffs' state claims. Generally, "the rights guaranteed by the United States Constitution and Maine Constitution are coextensive." *Bagley v. Raymond Sch. Dept.*, 728 A.2d 127, 132 (Me.1999), cert. denied, 528 U.S. 947, 120 S.Ct. 364, 145 L.Ed.2d 285 (1999). Thus, the Court need not separately discuss Plaintiffs' claims under the Maine Constitution.

### B. Section 1983 Claims

The Court now turns to an examination of Plaintiffs' claims. In short, Plaintiffs allege that Zach Logiodice was entitled to greater procedural due process than he received when he was subjected to a seventeen day suspension from MCI.

### 1. Procedural Due Process Requirements for a Suspension

In *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), the Supreme Court held that a student facing a suspension of ten days or less was entitled to (1) "oral or written notice of the charges against him," and if the student denied the charge, (2) "an explanation of the evidence" and (3) "an opportunity to present his side of the story." *Id.* at 581, 95 S.Ct. 729. The Court emphasized that the procedure may be informal and occur immediately following the alleged events. *See id.* at 582, 95 S.Ct. 729. In dicta, the Court noted that "[l]onger suspensions ... may require more formal procedures." *Id.* at 584, 95 S.Ct. 729.

In fact, Maine statute specifically allows school boards to "authorize the principal to suspend students up to a maximum of 10 days for infractions of school rules." 20–A M.R.S.A. § 1001(9). The same statute gives school boards the power to order a longer suspension or expulsion of a student "following a proper investigation of a student's behavior and due process proceedings" and further provides that "[a] student may be readmitted on satisfactory evidence that the behavior that was the cause of the student being expelled will not likely recur." *Id.*

In this case, the Court reads Plaintiffs' Complaint to allege that Zach suffered a deprivation of due process when he was excluded from school for more than ten days without any investigation or other due process proceedings.

### 2. State Action Requirement

■ A valid claim for deprivation of due process in violation of section 1983 necessarily requires that the conduct that led to the deprivation be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). In this case, because Zach was suspended from a private school Defendants argue that Plaintiffs cannot prove that state action was responsible for his deprivation of due process. On the undeveloped factual record currently before the Court, it is not clear whether MSAD 53 retained its statutory powers to investigate and hold due process proceedings related to the suspension of any student sent to MCI.[2] If, in fact, MSAD 53 retained these statutory duties, Plaintiffs' case alleging deprivation of due process may proceed against MSAD 53.

■ Assuming that MSAD 53 somehow delegated its duties to MCI,[3] the Court must then determine whether MCI can be regarded as having engaged in state action when it suspended Zach Logiodice. As the Supreme Court has recently reiterat-

---

**2.** Given this uncertainty, the Court does not address the attendant legal question, namely, whether Maine law allows the MSAD 53 School Board to delegate such powers to a private contract school.

**3.** The Court notes that under the contract between MSAD 53 and MCI, the Trustees of MCI "have the sole right to promulgate, administer and enforce all rules and regulations pertaining to student behavior, discipline and all use of the buildings and grounds of [MCI]." (Ex. A at 1 (attached to Docket # 13).) Despite this broad delegation of authority, it remains unclear whether MCI retains sole responsibility for any MSAD 53 student who is suspended or expelled from MCI or whether responsibility for such a student reverts back to MSAD 53.

ed, this determination is a "necessarily fact-bound inquiry." *Brentwood. Acad. v. Tennessee Secondary Sch. Athletic Assoc.*, —— U.S. ——, ——, 121 S.Ct. 924, 932, 148 L.Ed.2d 807 (2001) (quoting *Lugar*, 457 U.S. at 939, 102 S.Ct. 2744). To conclude that a private school engaged in state action, the Court must find at least one of the following: (1) that the school performed an exclusively and traditionally public function; (2) that the school's action was created, coerced or encouraged by the government; (3) that the school had a symbiotic relationship with the government; or (4) that there is an "entwinement" between the school and the state agencies with which it interacts. *Id.* at 930–34, 102 S.Ct. 2744 (discussing the various factors courts consider in determining whether a nominally private actor engaged in state actions for purpose of section 1983 liability).

On the current record, the Court cannot say that it clearly appears that Plaintiffs cannot recover on any of these viable theories. Alternatively, Plaintiffs may be able to prove that the MSAD 53 Defendants retained the duty to provide Zach Logiodice with due process after MCI suspended him for more than ten days. Under these circumstances, the appropriate course is for the Court to allow further factual discovery before determining which of the Defendants, if any, can be held liable for the alleged section 1983 violations.

Despite Defendant's arguments that the facts of this case fall squarely within the Supreme Court's decision in *Rendell–Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), the Court finds that *Rendell–Baker* is not controlling based on the Plaintiffs' allegations. Although the school in *Rendell–Baker* was an independently operated private institution that provided education for students with special needs who were referred by public school districts or other public entities that paid their tuition, the plaintiffs in *Rendell–Baker* were not students. *See id.* at 832, 102 S.Ct. 2764. The *Rendell–Baker* plaintiffs alleging violations of section 1983 were employees of the private institution. *See id.* at 841–42, 102 S.Ct. 2764 (explaining that the state entities involved "showed relatively little interest in the school's personnel matters").

Comparatively, MSAD 53 sends all of its high school aged students to MCI, not just individual special needs students. Thus, a high school aged student living within MSAD 53 who wishes to "receive the benefits of a free public education" under Maine law is sent to MCI. 20–A M.R.S.A. § 2. More importantly, the section 1983 claims raised in this case involve a claim by a student that he allegedly was denied due process, MSAD 53's appropriate interest in this matter is evidenced in the contract as well as the actions taken by Superintendent McCannell in trying to resolve this matter. Without further factual development, the Court simply cannot determine what amount of due process Zach Logiodice was entitled to in connection with his suspension and who was responsible for ensuring that Zach Logiodice received due process.

Moreover, in light of the Supreme Court's recent opinion in *Brentwood* and the unique facts of this case, the Court recognizes that this case raises a number of novel legal questions involving a public student's rights to due process given the alternative means for providing public education under Maine law. Such novel legal questions are not amenable to resolution at the motion to dismiss stage. Wright & Miller, Federal Practice and Procedure: Civil 2d § 1357 at 341–43 (1990) ("The court should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel ...

since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions.")

### 3. Qualified Immunity

In their separate motions to dismiss, both sets of Defendants argue that Superintendent McCannell, Principal Cummings and Dean Marquis, the individual school officials named as Defendants, are entitled to dismissal based on qualified immunity. "Qualified immunity is an affirmative defense, and thus the burden of proof is on [Defendants]." *DiMarco–Zappa v. Cabanillas*, 238 F.3d 25, 35 (1st Cir.2001). As the First Circuit has explained, "[q]ualified immunity is available to officials who err in their duties so long as the mistake is one that a reasonable [official] could have made, and the standard is favorable to the officer, protecting all but the plainly incompetent and those who knowingly violate the law." *Liu v. Phillips*, 234 F.3d 55 (1st Cir.2000) (internal citations and quotations omitted).

Determining whether a claim against an individual defendant is barred by qualified immunity requires a two-prong analysis. First, "the court must establish whether the constitutional right asserted by the plaintiff was 'clearly established' at the time of the alleged violation." *Fletcher v. Town of Clinton*, 196 F.3d 41, 48 (1st Cir.1999) (quoting *St. Hilaire v. City of Laconia*, 71 F.3d 20, 24 (1st Cir. 1995)). Second, the Court must ask whether a reasonable, similarly situated official "should have understood that the challenged conduct violated [the plaintiff's] established right." *Id.*

Turning to the first question, for a right to be "clearly established" the contours of the alleged right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). At this stage, it appears that at a public school, Zach would have had a clearly established right to "a proper investigation of a[his] behavior and due process proceedings" by the MSAD 53 school board before facing a suspension beyond ten school days.[4] 20–A M.R.S.A. § 1001(9). Whether Zach continued to have this right while he attended MCI involves a factual inquiry, which the Court has previously explained is best argued on a more developed factual record. Moreover, assuming Zach continued to have a right to due process proceedings, mixed questions of fact and law remain as to whether MSAD 53 or MCI was responsible for ensuring Zach due process in connection with the alleged suspension. Arguably, given this confusion, one or more of the individual Defendants may ultimately be able to prove that Plaintiff's rights were not "clearly established." However, without factual clarification regarding the relationship between MSAD 53 and MCI, the Court is simply unable to say that Plaintiff's clearly established right to due process at a public school was lost because MSAD 53 arranged for him to attend MCI.

---

**4.** Arguably, a right to "proper investigation" and "due process proceedings" is not so clear for every school official to know the outer limits of what is required for a suspension of more than ten days. Nonetheless, a reasonable school official would know that the complete failure to provide any type of investigation or hearing for a suspension lasting longer than ten days violated due process. In this case, it is clear that Defendants did not offer any type of further investigation or hearing until February 11, 2000. In fact, Plaintiffs allege that Principal Cummings affirmatively refused to hold a hearing during a February 2, 2000 conversation with Mrs. Logiodice.

With regard to the second element of a qualified immunity defense, the Court turns its attention to the letter from Superintendent McCannell, dated February 3, 2000, in which he writes, in relevant part, "[W]e have the due process rights of the individual students to consider. In this case, holding a student out beyond the ten-day suspension as allowed by statute, infringes upon [Zach's] rights." (Letter from Terrance McCannell, Superintendent, MSAD 53, to Douglas Cummings, Principal, MCI at 2 (Feb. 3, 2000) (Pl.Ex. 2 (attached to Docket #1)).) Based on this letter, it appears Superintendent McCannell was aware that the suspension at issue violated Zach's due process rights on or before February 3, 2000. Additionally, after receiving this letter, Principal Cummings reasonably should have know. that the continued suspension without any further proceedings infringed on Zach's due process rights. On the current record, it is unclear whether Dean Marquis read this letter.[5] However, the Court finds that upon writing or reading this letter a reasonable school official would take steps to provide a suspended student with due process.

Accepting Plaintiffs' factual averments and construing all reasonable inferences in Plaintiffs' favor, the Court concludes that issues of fact remain regarding whether Zach continued to have a clearly established right to due process while attending MCI. Additionally, Plaintiffs' allegations, if proven, establish that the conduct of one or more of the individual Defendants was not objectively reasonable. *See Miller v. Kennebec County,* 219 F.3d 8, 10 (1st Cir. 2000) (concluding that it was inappropriate for Court to grant summary judgment for officer when it was not clear that the officer's conduct was "objectively reasonable"). Thus, although the Court may very well find on the developed factual record that the individual Defendants are protected by qualified immunity, at this early stage, the Court cannot conclude that any of the individual Defendants are entitled to qualified immunity.

## IV. CONCLUSION

For these reasons, the Court hereby DENIES both of Defendants' Motions to Dismiss (Docket #s 5 & 11).

SO ORDERED.

---

**5.** With regard to Principal Cummings and Dean Marquis, there remains an additional question regarding whether they should be considered state actors or private actors for purposes of Plaintiffs' claims. If it is ultimately determined that these individual MCI Defendants were private school officials "acting under the color of state law," the Court notes that legal questions remain regarding whether Principal Cummings and Dean Marquis are entitled to qualified immunity as private actors. *Compare Richardson v.*

*McKnight,* 521 U.S. 399, 412, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997) (concluding privately employed prison guards were not entitled to qualified immunity), *with Frazier v. Bailey,* 957 F.2d 920, 929 (1st Cir.1992) (concluding that privately employed social workers performing investigations under state contract were entitled to qualified immunity). Assuming for the moment that the Court must reach this legal question, it is best resolved on a more complete factual record than is currently available.